# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

LINDA ROHRMAN, individually and
On behalf of all others similarly
Situated,

Plaintiff,                                                  Case No. 8:21-cv-836

V.

ALORICA INC.
Defendant,

_____.

## FLSA SECTION COLLECTIVE ACTION COMPLAINT FOR UNPAID OVERTIME WAGES

Plaintiff LINDA ROHRMAN, by and through the undersigned counsel, individually and on behalf of all others similarly situated, files this FLSA section 216(b), Collective Action Complaint against Defendant Alorica, Inc. ("Defendant"), and states and alleges the following:

**INTRODUCTION, VENUE AND JURISDICTION**

1. This is an action to recover unpaid overtime wages for Defendant's unlawful pay practices and policies which fored and permitted Plaintiff and all others similarly situated to suffer to work off the clock without being paid a premium for all hours worked in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207, and including

1

violations of the Record keeping requirements of the FLSA as per 29 CFR Part 516.

2. Plaintiff brings this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability "prescribed by the FLSA" may be maintained against any employer … by any one or more employees for and on behalf of herself or themselves and other employees similarly situated. Plaintiff brings this case on behalf of herself and other "similarly-situated" persons who may join this case pursuant to § 216(b)(the "FLSA Class").

3. This Court has jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), as this matter involves a federal question, specifically the Fair Labor Standards Act.

4. Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred here.

5. This Court has personal jurisdiction over Defendant as Defendant operated continuous business activities from its fixed office located in Sarasota, Florida within this district, and is subject to jurisdiction under Florida's long arm statute Fla. Stat. § 48.193.

**PARTIES**

6. Plaintiff is an adult who at all times material, resided in Venice, Florida and within this District.

7. Plaintiff performed work for Defendant as a Customer Service Representative from the period of July, 2020 until approximately October, 2020.

8. Plaintiff trained and worked at the Defendant's Sarasota call center office located at 2805 Fruitville Rd, Sarasota, FL 34237 for approximately 6 to 8 weeks, until then required to commence working virtually from her home, as a "Virtual Inbound Customer Service Representative".

9. At all relevant times, Plaintiff and those similarly situated were employees within the meaning of the FLSA.

10. Defendant is a for-profit Delaware corporation with principal place of business in Irvine, California. Defendant can be served through its Statutory Agent, Corporation Service Company 1201 HAYS STREET TALLAHASSEE, FL 32301-2525.

11. At all relevant times, Defendant conducted business in this judicial district from its fixed offices located at 2805 Fruitville Rd, Sarasota, FL 34237.

12. At all relevant times, Defendant was an employer within the meaning of the FLSA.

13. 12. At all relevant times, Defendant was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1).

14. Upon information and belief, Defendant had revenues of $500,000 in each of the preceding 3 years to the filing of this Complaint, and employed hundreds if not thousands of employees.

15. At all relevant times, Plaintiff and those similarly situated were employees engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206-207.

16. Plaintiff herein consents to join this collective action pursuant to 29 U.S.C. § 216(b).

**FACTUAL ALLEGATIONS**

17. Defendant is a customer service outsourcing company that operates call centers throughout the United States, including a call center in Sarasota, Florida, within this District.

18. Defendant also operates multiple call centers in the following states: Arizona, Alabama, California, Illinois, Ohio, North Carolina, South Carolina, New Mexico, Oklahoma, Texas, Missouri, Nebraska.

4

19. The number of actual offices is or has been upwards of 20 or more offices within the preceding 3 years; Defendant operated or operates call centers at about 6 offices: Lake Mary, Sarasota, Fort Myers, Tampa, Cutler Ridge and Miami Lakes.

20. As per Defendant's own careers page on its website, it also employs "Inbound Customer Service Representative-Virtual" across the United States.

21. At all times material to this Complaint, Plaintiff worked as a customer service representative for Defendant reporting to its Sarasota, Florida call center.

22. Plaintiffs and similarly situated employees were/are classified by Defendant as non-exempt under the FLSA and were/are paid an hourly rate.

23. Other similarly situated employees were employed by Defendant as customer service representatives at Defendant's call centers in Sarasota and in the additional locations in the following states: Arizona, Alabama, California, Illinois, Ohio, North Carolina, South Carolina, New Mexico, Oklahoma, Texas, Missouri, Nebraska.

24. Plaintiff and other similarly situated employees worked 40 or more hours per workweek when factoring in all the preliminary start up times, and time working after the shift.

25. Plaintiff and other similarly situated employees were non-exempt employees under the FLSA and were paid on an hourly basis.

26. As a customer service representative, Plaintiff's job duties included receiving inbound calls from Defendant's customers. Plaintiff specifically handled calls from Ally Bank customers.

27. Plaintiff and other similarly-situated employees were required by Defendant to perform unpaid work before clocking in each day, thus working off the clock, including, but not limited to, starting, booting up, and logging into Defendant's computer systems, numerous software applications, and phone systems.

28. By common policy and practice, Plaintiff and other similarly-situated employees were required to have their computers booted up and have several applications running before the start of their shifts so that they could take their first call promptly upon commencing work at their scheduled start times.

29. At all relevant times herein, pursuant to Defendant's common practice, plaintiff and similarly situated employees were/are required

to work off-the-clock, including but not limited to, reporting to work and preparing to take customer calls, as well as often remaining at work to take final customer calls beyond the time for which they were compensated.

30. When Plaintiff and all other CSR were on the telephone at or near the end of their shift, they were not permitted to simply hang up on the customer, and thus their phone calls could and did exceed past the ending shift time, but meanwhile Plaintiff and all other CSR were expected and required to log out or clock out for the day at the end of the shift time.

31. Defendant is aware of this uncompensated work, and trains its customer service representative employees to arrive at work, or commence their work activities at home, at least 15 minutes earlier than the scheduled shift start time in order to perform this mandatory work, off the clock.

32. Defendant nevertheless fails to count this work performed by Plaintiff and other similarly-situated employees as "hours worked."

33. Plaintiff estimates that she spent approximately 10 to 15 minutes per day booting up, starting and logging into Defendant's computer systems, numerous software applications,and phone systems.

7

34. Plaintiff and other similarly-situated employees performed this unpaid work every workday, and it constituted a part of their fixed and regular working time.

35. This unpaid work performed by Plaintiff and other similarly situated employees was practically ascertainable to Defendant.

36. There was no practical administrative difficulty of recording this unpaid work of Plaintiff and other similarly-situated employees. It could have been precisely recorded for payroll purposes simply by allowing them to clock in before they began booting up Defendant's computer systems, applications, and phone systems.

37. This unpaid work performed by Plaintiff and other similarly-situated employees constituted a part of their principal activities, was required by Defendant, and was performed for Defendant's benefit.

38. Moreover, this unpaid work was an integral and indispensable part of other principal activities performed by Plaintiff and other similarly situated employees. They cannot perform their work without booting up Defendant's computer systems, applications, and phone systems.

39. Defendant knowingly and willfully failed to pay Plaintiff and other similarly situated customer service representatives for starting and

logging into Defendant's computer systems, numerous software applications, and phone systems, during which they performed work that managers and/or other agents and/or representatives observed.

40. As a result of Plaintiff and other similarly-situated employees not being paid for all hours worked, Plaintiff and other similarly-situated employees were not paid overtime compensation for all of the hours they worked over 40 each workweek.

41. Defendant knowingly and willfully engaged in the above-mentioned violations of the FLSA.

42. Defendant failed to make, keep and preserve records of the unpaid work performed by Plaintiff and other similarly-situated employees before clocking in each day.

**COLLECTIVE ACTION ALLEGATIONS**

43. Plaintiff brings this action on her own behalf pursuant to 29 U.S.C. § 216(b), and on behalf of a class of similarly-situated employees who have been, are being, or will be, adversely affected by Defendant's unlawful conduct.

44. The class that Plaintiff seeks to represent and for which Plaintiff seeks the right to send "opt-in" notices for purposes of the collective

action, and of which Plaintiff is herself a member, is composed of and defined as follows:

**CLASS A**
**All persons employed by ALORICA INC. anytime in the 3 years preceding the filing of this complaint to the date of trial, who were employed as customer service representatives anywhere in the U.S. who worked from Defendant's physical call center offices.**

**CLASS B**
**All persons employed by ALORICA INC. anytime in the 3 years preceding the filing of this complaint to the date of trial, who were employed as Virtual customer service representatives working anywhere in the U.S. who worked remotely from their homes.**

45. This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. §216(b) as to claims for unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA. In addition to Plaintiff, numerous current and former employees are similarly situated with regard to their claims for unpaid wages and damages.

46. Plaintiff is well suited to represent both classes of persons (CLASS A and CLASS B), as she first worked first from Defendant's physical office, and then later served and worked virtually from her own home.

47. Upon information and belief, Defendant employed many 1000's of customer service representatives working from its physical offices and remotely during the preceding 3 years.

48. Upon information and belief, at any given time Defendant employed upwards of 2500 or more CSR working in its offices and.or remotely, including 150 to 200 from or reporting to the Sarasota office alone.

49. The similarly-situated employees are known to Defendant and are readily identifiable through Defendant's payroll records. These individuals may readily be notified of this action and allowed to opt-in pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA.

50. Plaintiff, like all CSR, was scheduled for 9 hour days, M-F in a mandatory corporate set schedule, and including the opportunity for a 30 minute meal break.

51. Plaintiff was not permitted to clock in until exactly the beginning shift time, but meanwhile was expected and required to be on the dot, ready to commence with handling calls.

52. In order to work remotely, Alorica required that its CSRs already have, or be able to obtain, a computer with which the CSR can use to run the appropriate programs needed to perform their everyday tasks.

53. While working remotely from home, the list of pre-shift tasks expanded, since the CSRs now had to log in through a Virtual Private Network ("VPN"), which generates and sends a unique identifier code to the employees' personal cell phone.

54. Once they receive the code and input it into the computer, they can perform all of the typical pre-shift tasks necessary in order to start their shift. While working remotely, the pre-shift routine takes approximately 15 minutes per day.

55. Despite the language in the Manual requiring that all work time must be paid, CSRs are not paid during this time.

56. If the VPN code is not sent to the employees' cell phone, or if there are any technical issues with the system or computer throughout the day, the CSR must use their personal cell phone to call for technical support and to advise their supervisor that they are offline.

57. Prior to working remotely, Plaintiff was also required to arrive 15 minutes before her stated shift time and to commence the login

process and do so off the clock while being paid just a straight 40 hours or pay or a salary, and not being paid a premium for the overtime hours incurred.

58. All employees were required to have their computers booted up and have several applications running before the start of their shifts so that they could take their first call promptly upon commencing work at their scheduled start times.

59. Additionally, Plaintiff was expected to handle all telephone calls even when such calls caused her to exceed the ending shift time but meanwhile, to still clock out at the end of the shift.

60. On one occasion, Plaintiff continued the conversation with the customer past the ending shift time and upwards for about 45 minutes, and performing her job duties.

61. Plaintiff's manager then proceeded to delete the time and not pay her for it, including the premium pay that was due and owing for the overtime worked while performing her job.

## COUNT I - Violation of Section 2017 of the FLSA: FAILURE TO PAY OVERTIME WAGES

62. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

63. The FLSA requires that non-exempt employees be paid for hours worked iN excess of 40 in a workweek at a rate of not less than one and one-half their regular rates.

64. Defendant violated the FLSA by having a company-wide policy or practice of not paying Plaintiff and those similarly-situated to perform compensable pre-shift work.

65. Defendant further violated the FLSA with this company-wide policy or practice because it thereby failed to account for all hours worked for the purposes of calculating overtime hours in a workweek.

66. Defendant's practice and policy of not paying Plaintiff and other similarly situated employees for all time worked and all overtime compensation earned at a rate of one and one-half times their regular rate of pay for all hours worked over forty (40) each workweek violated the FLSA, 29 U.S.C. §§ 201-219, 29 C.F.R. § 785.24.

67. Defendant's failure to keep records of all hours worked for each workday and the total hours worked each workweek by Plaintiff and other similarly-situated employees violated the FLSA, 29 U.S.C. §§ 201-219, 29 CFR § 516.2(a)(7).

68. By engaging in the above-mentioned conduct, Defendant willfully, knowingly, and/or recklessly violated provisions of the FLSA.

69. As a result of Defendant's practices and policies, Plaintiff and the FLSA Class have been damaged in that they have not received wages due to them pursuant to the FLSA; and because wages remain unpaid, damages continue.

**COUNT II - VIOLATION OF THE RECORD KEEPING REQUIREMENTS OF THE FLSA 29 CFR PART 516**

70. Plaintiff adopts and realleges paragraphs 1-61 as if fully set forth herein.

71. The Defendant had a non-delegable duty and obligation to track and record the work hours of all non-exempt employees, including Plaintiff and all CSR.

72. Defendant instructed and commanded Plaintiff and all other CSR to commence with preliminary, mandatory work activities in preparing to handle phone calls but refused to permit CSR to clock in until the exact time their shift was scheduled to start.

73. When Plaintiff worked a longer time than her set schedule, the defendant edited or shaved off the additional time.

74. Defendant's actions of editing and shaving off time is a willful violation of the record keeping requirements of the FLSA, as set forth in 29 CFR part 516.

75. Similarly, requiring Plaintiff and all others similarly situated to engage in work activities off the clock is likewise a record keeping violation of the FLSA.

76. Defendant has willfully and deliberately violated the FLSA's record keeping requirement, and as such, Defendant's time records must be deemed to be inaccurate and unreliable.

**PRAYER FOR RELIEF:**

**WHEREFORE,** Plaintiff, on behalf of herself and all other similarly-situated employees, collectively prays that this Honorable Court:

A. Conditionally certify this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b) and direct that Court-approved notice be issued to similarly situated employees informing them of this action and enabling them to opt-in;

B. Enter judgment against Defendant and in favor of Plaintiff and all other similarly situated employees determining Defendant has violated the record keeping requirements of the FLSA and Section 207 of the FLSA;

C. Award Plaintiff and the class she represents actual damages for unpaid wages;

D. Award Plaintiff and the class she represents liquidated damages equal in amount to the unpaid wages found due to Plaintiff and the class;

E. Award Plaintiff and the class she represents pre-judgment and post-judgment interest at the statutory rate;

F. Award Plaintiff and the class she represents attorneys' fees, costs, and Litigation expenses; and

G. Award Plaintiff and the class she represents further and additional equitable relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by this Complaint.

Dated this 7th Day of April, 2021.

*s/Mitchell L. Feldman, Esq.*
Florida Bar No. 0080349
FELDMAN LEGAL GROUP
6940 West Linebaugh Avenue, Suite 101
Tampa, Florida 33625
Tele: (813) 639-9366
Fax: (813) 639-9376
E-mail: mfeldman@flandgatrialattorneys.com
Secondary: jquintus@flandgatrialattorneys.com
Attorneys for Plaintiffs and the class of similarly situated
